```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

| | |
|---|---|
| RHONDA FLUELLEN,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>      Defendant. | Civil No. 19-13198 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Rhonda Fluellen from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Memorandum Opinion and Order's reasoning.

**I.   STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence" means "'more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

>     specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

>     At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
>     At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
>     At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
>     At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."2 *202 Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot,

> the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201-02 (3d Cir. 2019).

### II. FACTS

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff, who was 55 years old at the alleged onset date, claims disability, in part, based on a diagnosis of carpal tunnel syndrome. (A.R. at 31-32)

In support of her claim in this regard, Plaintiff provided voluminous treatment notes and medical opinions, including a medical source statement, from Dr. Mark Fisher, the rheumatologist who has treated her since at least 2006. (A.R. at 314-28, 455-564, 604-62, 869-79, 890-91)  She also testified at length regarding her symptoms.  (A.R. at 56-60)

### III. ALJ'S DETERMINATION

The ALJ found Plaintiff not disabled.  At Step Two of the five-step sequential analysis, the ALJ concluded that Plaintiff

had "severe impairment[]" of, *inter alia*, "athralgia in multiple joints". (A.R. at 31) The ALJ found Plaintiff's impairment with regard to carpal tunnel syndrome to be "non-severe," stating that "[t]here is no indication in the record of any diagnosis of carpal tunnel syndrome or treatment for this condition that would cause more than minimal limitations in physical functioning." (A.R. at 32)

At Step Three, the ALJ determined that, "despite [Plaintiff's] testimony to the contrary," Plaintiff's would not have "an inability to perform fine or gross movements with the hands or upper extremities. (A.R. at 33) At Step Four of the five-step sequential analysis, the ALJ concluded that Plaintiff had "the residual function capacity to perform medium work as defined in 20 CFR 404.1567(c)." (A.R. at 33) The ALJ noted that the limitation to medium work "takes into account the various pain in [Plaintiff's] other joints." (A.R. at 37) He also "accommodate[d] any limitations that [Plaintiff] has in her bilateral shoulders and elbows that would make movement of her upper extremities difficult" and "f[ou]nd that [Plaintiff can only occasionally reach overhead". (A.R. at 37) The ALJ elsewhere noted, without elaboration, that he "added additional limitations taking into account the athralgias of the upper extremities." (A.R. at 38)

The ALJ noted that, in a March 2017 medical source

statement, Plaintiff's treating physician Dr. Fisher opined that Plaintiff could only occasionally handle. (A.R. at 37, citing A.R. at 890-91)  The ALJ gave "little weight" to the treating physician's opinion, stating that he "d[id] not find that Dr. Fisher's own treatment records support these limitations" and that Dr. Fisher's opinion was "inconsistent with the complete record." (A.R. at 37)  The ALJ gave "great weight" to the assessment of the consultative examiner, who opined that Plaintiff had full functionality of both hands and "no significant limitations with fine movements". (A.R. at 38, citing A.R. at 565-72)  The ALJ stated that the "opinion [of the consultative examiner] is reasonable based on the evidence in the record and consistent with findings on examinations", but also noted that the ALJ had "accommodated additional limitations supported by the evidence. (A.R. at 38)  The ALJ also assigned "some weight" to the opinion of the state agency physician, who opined that Plaintiff "would be limited to light work." (A.R. at 38, citing A.R. at 98-113)  The ALJ stated that he found "a medium exertional level would be more appropriate based on the evidence showing improvement in symptoms after surgery." (A.R. at 38)

The ALJ concluded that, given her residual function capacity, Plaintiff could perform past relevant work as a data entry clerk, file clerk, or administrative clerk. (A.R. at 38)

**IV.  ANALYSIS**

Among other arguments, Plaintiff asserts that the ALJ erred in failing to find at Step Two the presence of a severe physical impairment caused by Plaintiff's carpal tunnel syndrome, or, alternatively, in failing to take Plaintiff's carpal tunnel syndrome into consideration in the formulation of the RFC.

The Commissioner argues that a failure at Step Two to find Plaintiff's carpal tunnel syndrome severe is "not legally significant" and not a basis for remand, as a finding of at least one severe impairment allows Plaintiff to proceed to the next step of the process.  The Commissioner further argues that "Plaintiff's carpal tunnel syndrome . . . had no more than a 'minimal' effect on her ability to meet the basic demands of work activity, and that "the ALJ fully accounted for all of Plaintiff's *credibly-established* limitations" (emphasis added).

While a failure to find an additional severe impairment at Step Two is not a *per se* basis for remand, it does not necessarily follow that it is harmless to the Plaintiff's case *in toto*.  A finding of a second severe limitation in Step Two would of necessity affect the limitation analysis of Step Three, and likely the residual function capacity analysis of Step Four. Had a severe impairment with regard to Plaintiff's carpal tunnel syndrome been found at Step Two, a revised RFC incorporating limitations in handling and fingering would have eliminated

Plaintiff's past relevant work, and may have resulted in the vocational expert finding no jobs available for the Plaintiff.

Additionally, it is not clear whether and to what extent the ALJ integrated consideration of even a "minimal" effect Plaintiff's carpal tunnel syndrome into his assessment of Plaintiff's RFC.  Even though Step Two the ALJ found Plaintiff's carpal tunnel syndrome to be a "non-severe" impairment, that finding is distinguishable from a finding that Plaintiff suffered from no medically determinable impairment at all.  If that were the case, the ALJ would not be required to consider an ailment that is not medically determinable.  See Diciano v. Comm'r of Soc. Sec., Civ. No. 18-17383, 2019 WL 6696523, at *4 (D.N.J. Dec. 9, 2019) (explaining that "[i]t is true that an ALJ must assess a claimant's severe impairments in combination with non-severe impairments," but "an ALJ does not have to consider an alleged impairment if he does not find such impairment is medically determinable") (citing, *inter alia*, 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.")).

In the scenario presented in this case, however, the regulations require the ALJ to consider non-severe, but

medically determinable, impairments in combination with severe impairments in the RFC determination.  Thus, Plaintiff's medically determinable impairment stemming from her carpal tunnel syndrome, even if not "severe", presumably would have some degree of impact on Plaintiff's RFC.  The impact of such impairments may only require minor modifications to the RFC, with the end result being that Plaintiff is still capable of performing her past relevant work or other work at the medium exertional level.  In the absence of explanation of the ALJ's consideration of this impairment, the Court can only guess.

Perhaps the ALJ arrived at his RFC determination having taken Plaintiff's carpal tunnel syndrome symptoms into account, as represented by the Commissioner.  However, the Court cannot affirm on this basis.  The ALJ's written decision does not allow the Court to discern whether the ALJ took into consideration Plaintiff's carpal tunnel syndrome in determining that the RFC would not contain any limitation for handling or fingering.  See Stockett v. Comm'r of Soc. Sec., 216 F. Supp. 3d 440, 456 (D.N.J. 2016) (Bumb, D.J.) ("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'") (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000)).  This is not merely harmless error.  The ALJ found that Plaintiff would be able to past relevant work as a data entry clerk, file clerk, or administrative clerk,  all of which

require at least frequent handling and fingering.  See <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> at 325 ("administrative clerk"), 345 ("data entry clerk"), 347 ("file clerk").  Whether the ALJ took into account Plaintiff's carpal tunnel syndrome in formulating the amount of handling and fingering included in the RFC may thus affect whether Plaintiff could perform any of these jobs.

It may well be the case that the ALJ will arrive at the same decision on remand.  At this juncture, however, the ALJ must provide additional explanation for his decision.  As such, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.

**ACCORDINGLY**, it is on this <u>**30th**</u> day of **April, 2020**,

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE THIS CASE**.

                                               <u>  s/ Renée Marie Bumb  </u>
                                               RENÉE MARIE BUMB, U.S.D.J.